IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| vs. | * | No. 4:10CR00032-001 SWW |
| | * | |
| TONY ROBINSON | * | |

**Memorandum Opinion and Order**

Before the Court are defendant's motion to bar prosecution and motion to suppress evidence to which the government responded.  For the reasons stated below, the motions are denied.

On September 26, 2009, the defendant was arrested for possession of a firearm in violation of Ark. Code Ann. §5-73-103.  He was charged in a three-count felony information in the Circuit Court of Pulaski County, Arkansas, on November 4, 2009.  Counts 1 and 2 charged the defendant with domestic battery in the third degree and theft of property, both regarding an incident that occurred on or about February 13, 2009.  Count 3 charged the defendant with possession of a firearm on September 26, 2009.[1]

On February 2, 2010, the Grand Jury for the Eastern District of Arkansas returned an indictment charging the defendant with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).  The facts supporting the indictment are the same as those that formed the basis for Count 3 of the information filed in state court.  On February 18, 2010, in Pulaski County Circuit Court, the defendant pled guilty to Count 1 of the state information and was sentenced to 36 months probation.  Counts 2 and 3 were nolle prossed.[2]  On September 3,

---

[1]Def's. Mot. to Bar Prosecution, Ex. 1.

[2]*Id.* at Ex. 2.

2010, the defendant filed the present motion to bar prosecution of this case, arguing that "subjecting him to an indictment in federal court after his negotiated plea in state court is unconscionable and is in violation of the Fifth and Fourteenth Amendments to the United States Constitution." [3]

The Double Jeopardy Clause is inapplicable in this situation because jeopardy did not attach in the state court proceedings. *See Williams v. State*, 268 S.W.3d 868, 871-72 (Ark. 2007)(double jeopardy does not attach in a jury trial until the jury is sworn); *Tipton v. State*, 959 S.W.2d 39 (Ark. 1998)(jeopardy attaches after the first witness is sworn in a bench trial). It appears there was no adjudication on the felon in possession charge as it was nolle prossed. *See State v. C.W.*, 286 S.W.3d 118 (Ark. 2008)(order granting *nolle prosequi* is a dismissal, and the State must refile the charges if it wishes to pursue the prosecution). Further, even assuming there had been an adjudication on the merits of the state court felon in possession charge, the Double Jeopardy Clause would not bar a subsequent federal prosecution because of the doctrine of dual sovereignty. *See Abbate v. United States,* 359 U.S. 187, 193-95 (1959). Therefore, defendant's Double Jeopardy argument is without merit.

Similarly, "[t]he fact that the federal government prosecutes a federal crime in federal court that could have been or has been prosecuted as a state crime in a state court does not itself violate due process." *United States v. Jacobs,* 4 F.3d 603, 605 (8th Cir. 1993)(internal quotation omitted). To the extent that the defendant claims the federal government should be bound by any agreement not to prosecute the felon in possession charge, the argument is rejected because the state cannot bind the federal authorities. *United States v. Sparks,* 87 F.3d 276, 278-79 (9th Cir. 1996). In addition, the defendant does not assert that any promise was made that federal

---

[3] *Id.* at ¶ 5.

charges would not be pursued or that any person with authority from the federal government to make such a promise participated in the plea negotiations. Rather, the defendant states he only believed that the plea agreement was "a good faith effort by all parties involved, at the state level, to resolve these matters without having to go to trial."[4] Defendant submits no transcript or written plea agreement setting forth the specific terms of the state court negotiated plea.

Defendant complains that he was not made aware of the federal Indictment prior to his negotiated plea agreement with the state. As the docket in this case reflects, the Indictment had been filed at the time the defendant entered his plea in state court; however, the Indictment was ordered sealed because an arrest warrant had been issued for the defendant. Disclosure of the existence of the Indictment could have placed the safety of the officers executing the search warrant at risk. Moreover, the United States was under no obligation to disclose its investigation.

To the extent the defendant's argument may be construed to assert that there was an unreasonable pre-indictment delay that violated his due process rights, the defendant must establish that "(1) the delay resulted in actual and substantial prejudice to the presentation of his defense and (2) the government intentionally delayed his indictment either to gain a tactical advantage or to harass him." *United States v. Skinner,* 433 F.3d 613,616-17 (8th Cir. 2006). The defendant has not argued or established either prejudice or intentional delay as required. The United States says that the file was submitted to the United States Attorney's Office for the Eastern District of Arkansas on December 17, 2009. The Indictment was filed approximately one and one-half months after submission, and approximately four months after the arrest.

---

[4]*Id.* at ¶ 4.

Finally, the defendant asserts that the State of Arkansas improperly allowed him to enter into a negotiated plea with knowledge that a federal indictment was in the works and failed to disclose this information to the defendant or his counsel.  As previously noted, the Indictment was ordered sealed.  Furthermore, any complaint regarding the state court proceedings and the validity of the plea in that case is not properly before this Court.

Also before the Court is the defendant's motion to suppress evidence.  The defendant asserts that he was arrested after being stopped and then searched by a Little Rock police officer who had no reasonable suspicion or probable cause to believe that the defendant had been involved in any criminal activity.  During the search, the officer recovered a loaded handgun from the defendant's vehicle.

The record shows that on September 26, 2009, at approximately 4:30 a.m., Little Rock Police Department ("LRPD") Officer Alicia Smith was working off-duty at Elevations, a nightclub located at 7200 Colonel Glenn Road in Little Rock, Arkansas. According to Smith's report, the owner of Elevations asked that the defendant be removed from the premises because the defendant had an altercation with another individual inside the nightclub.  *See Govt's. Resp., Exs. A & B.*  The argument continued between the defendant and an unknown black male.  *Id., Ex. B.*  Officer Smith followed the defendant down the hill to ensure that he left the property. The defendant was observed leaving, but returned moments later. *Id.*  Subsequently, an individual identified by Officer Smith as a security guard stated that the defendant had a gun in his hand and that the defendant got into a white car.  *Id.*  Officer Smith immediately notified Sergeant Dan Brown that the defendant had a gun and had taken off in the white car.  Officer Smith never lost sight of the white car, and the defendant was stopped approximately one-half block away.  *Id.*

Officer Smith, Sergeant Brown, and Officer Byron Harper directed the defendant and another occupant to exit the vehicle, conducted a pat-down for officer safety, and the defendant denied having the gun. *Id.* The defendant and the other occupant were placed in the back of the patrol car and a warrant check was done, at which time it was discovered that the defendant had several outstanding warrants and was a felon. *Id.*, Ex. C. According to the government, Officer Smith will testify that she subsequently went to the car and could see the butt of the gun sticking out from underneath the driver's seat. An inventory search of the vehicle was conducted prior to impound. Exs. A & D. A CZ, model CZ 75, 9 mm pistol, bearing serial number U4262 was located under the driver's seat. Exs. A & B.

"The Fourth Amendment permits an investigative stop of a vehicle if officers have a reasonable suspicion that the vehicle or its occupants are involved in criminal activity." *United States v. Bell*, 480 F.3d 860, 863 (8th Cir. 2007). "Automobiles, as well as people, are subject to *Terry* stops." *United States v. Watts,* 7 F.3d 122, 125 (8th Cir. 1993). In *United States v. Brown*, 550 F.3d 724, 727 (8th Cir. 2008), the Eighth Circuit upheld a vehicle stop where officers observed the defendant with a gun because they had reasonable suspicion that the defendant was committing the crime of unlawful use of a weapon where the experience of the officers led them to believe that the defendant was too young to obtain a permit to carry a concealed weapon.

Here, the officers initiated the vehicle stop upon a reasonable, articulable suspicion that the defendant was carrying a gun moments after a verbal altercation with another individual and that the defendant got into a white vehicle with the gun. After the stop, the defendant continually stated he did not have a gun in the vehicle, even though the officers had information to the contrary. The officers had a reasonable belief that there was a threat to officer safety

based upon the security guard's report of the gun, and reasonably conducted a pat down.  The Court finds the officers' stop of the defendant's vehicle was constitutional.

"The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that searches conducted outside the judicial process without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment - subject only to a few specifically established and well-delineated exceptions." *United States  v. Bynum*, 508 F.3d 1134,1137 (8th Cir. 2007)(internal quotation omitted).  "It is settled that an officer, without a warrant, may seize an object in plain view provided the officer is lawfully in the position from which he or she views the object, the object's incriminating character is immediately apparent, and the officer has a lawful right to access the object." *Id.* (internal quotation omitted).  "The act of looking through a car window is not a search for Fourth Amendment purposes because 'a person who parks a car - which necessarily has transparent windows - on private property does not have a reasonable expectation of privacy in the visible interior of his car.'" *Id.* (quoting *United States v. Hatten*, 68 F.3d 257, 261 (8th Cir. 1995).   "Neither probable cause nor reasonable suspicion is necessary for an officer to look through a window (or open door) of a vehicle so long as he or she has a right to be in close proximity to the vehicle."  *Id.*

Here, after determining that the defendant had outstanding warrants, the defendant was taken into custody.  Officer Smith saw the gun in plain view when she returned to the vehicle. The incriminating character of the gun was immediately apparent.  "Hidden guns, even badly hidden guns, are by their nature incriminating." *United States v. Beatty,* 170 F.3d 811, 814 (8th Cir. 1999)(internal quotation omitted).   Additionally, "in Arkansas, carrying a handgun in a vehicle can be illegal." *Id.* (citing Ark. Code Ann. §5-73-120 (Michie 1993)).  Officer Smith's observation of the gun in plain view provided probable cause to believe that the vehicle

contained contraband or other evidence of a crime.  *Brown,* 550 F.3d at 727.  Officer Smith was lawfully outside the vehicle, as she had authority under LRPD policy to impound the vehicle. Furthermore, an inventory search of the vehicle was performed prior to impound and the gun was recovered at that time.  The Court finds the seizure of the gun was constitutional.

IT IS THEREFORE ORDERED that the motion to bar prosecution [docket entry 16] and the motion to suppress evidence [docket entry 15] are denied.

DATED this 20th day of September, 2010.


/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE